IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

MARCUS JENKINS,                    )
                                   )
           Petitioner,             )
                                   )
     v.                            )          Civil Action No. 2:10cv377-WHA
                                   )                    (WO)
UNITED STATES OF AMERICA,          )
                                   )
           Respondent.             )

**RECOMMENDATION OF THE MAGISTRATE JUDGE**

This matter is before the court on a *pro se* motion to vacate, set aside, or correct sentence pursuant to 28 U.S.C. § 2255.

## I.   BACKGROUND

Pursuant to a guilty plea entered on October 3, 2008, Marcus Jenkins ("Jenkins") was convicted of conspiracy to distribute and possess with intent to distribute cocaine hydrochloride and cocaine base, in violation of 21 U.S.C. §§ 846 and 841(a)(1).[1]  A sentencing hearing was held on May 28, 2009, after which the district court sentenced Jenkins to 211 months in prison.  No direct appeal was taken.  On December 3, 2009, after considering a motion for reduction in sentence for substantial assistance filed by the government (Fed.R.Crim.P. 35), the district court reduced Jenkins's sentence to 195 months.

---

[1]Jenkins pled guilty under a negotiated plea agreement by which he waived his rights to appeal or collaterally attack his sentence except on grounds of ineffective assistance of counsel or prosecutorial misconduct.

On April 29, 2010, Jenkins filed this § 2255 motion, asserting the following claims:

1.     His trial counsel, Andrew M. Skier, rendered ineffective assistance of counsel by failing to request a mental evaluation prior to his change of plea hearing, in order to determine his competency.

2.     His counsel at sentencing, Cleophus Gaines, Jr., rendered ineffective assistance of counsel by failing to argue mental health issues at sentencing, depriving him of the opportunity to receive a downward departure under U.S.S.G. § 5K2.13 based on his diminished capacity and mental retardation.

*Doc. Nos. 1 and 1-1.*[2]

The government argues that Jenkins's claims lack merit and do not entitle him to any relief. *Doc. No. 11*. Jenkins was afforded an opportunity to respond to the government's submissions, but has not done so. After due consideration of the § 2255 motion, the government's submissions opposing the motion, and the record in this case, the court concludes that an evidentiary hearing is not required and that, pursuant to Rule 8(a), *Rules Governing Section 2255 Proceedings in the United States District Courts*, the motion should be denied.

## II.   DISCUSSION

### A.   *General Standard of Review*

Because collateral review is not a substitute for direct appeal, the grounds for collateral attack on final judgments pursuant to 28 U.S.C. § 2255 are extremely limited. A

---

[2]Unless otherwise indicated, references to document numbers in this Recommendation are to those assigned by the Clerk to pleadings docketed in the instant action. Page references in the pleadings for this action are to those assigned by CM/ECF.

prisoner is entitled to relief under § 2255 if the court imposed a sentence that (1) violated the Constitution or laws of the United States, (2) exceeded its jurisdiction, (3) exceeded the maximum authorized by law, or (4) is otherwise subject to collateral attack. *See* 28 U.S.C. § 2255; *United States v. Phillips*, 225 F.3d 1198, 1199 (11ᵗʰ Cir. 2000); *United States v. Walker*, 198 F.3d 811, 813 n.5 (11ᵗʰ Cir. 1999). "Relief under 28 U.S.C. § 2255 'is reserved for transgressions of constitutional rights and for that narrow compass of other injury that could not have been raised in direct appeal and would, if condoned, result in a complete miscarriage of justice.'" *Lynn v. United States*, 365 F.3d 1225, 1232 (11ᵗʰ Cir. 2004) (citations omitted). "[A] non-constitutional error that may justify reversal on direct appeal does not generally support a collateral attack on a final judgment, unless the error (1) could not have been raised on direct appeal and (2) would, if condoned, result in a complete miscarriage of justice." *Lynn*, 365 F.3d at 1232-33 (citations omitted); *Hill v. United States*, 368 U.S. 424, 428 (1962) (error of law does not provide basis for collateral attack unless claimed error constituted a "fundamental defect which inherently results in a complete miscarriage of justice"). The "fundamental miscarriage of justice" exception recognized in *Murray v. Carrier*, 477 U.S. 478, 496 (1986), provides that it must be shown that the alleged constitutional violation "has probably resulted in the conviction of one who is actually innocent."

### B.   *Standard of Review for Claims of Ineffective Assistance of Counsel*

A claim of ineffective assistance of counsel is governed by the standards of *Strickland*

*v. Washington*, 466 U.S. 668 (1984). *Grossman v. McDonough*, 466 F.3d 1325, 1344 (11th Cir. 2006). Under *Strickland*'s two-part test, a petitioner must demonstrate (1) that "counsel's representation fell below an objective standard of reasonableness" and (2) that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Darden v. Wainwright*, 477 U.S. 168, 184 (1986) (internal quotation marks omitted); *Chandler v. United States*, 218 F.3d 1305, 1313 (11th Cir. 2000).

Scrutiny of counsel's performance is "highly deferential," and the court indulges a "strong presumption" that counsel's performance was reasonable. *Chandler*, 218 F.3d at 1314 (internal quotation marks omitted). The court will "avoid second-guessing counsel's performance: It does not follow that any counsel who takes an approach [the court] would not have chosen is guilty of rendering ineffective assistance." *Id*. (internal quotation marks and brackets omitted). Thus, "[g]iven the strong presumption in favor of competence, the petitioner's burden of persuasion – though the presumption is not insurmountable – is a heavy one." *Id*.

As noted above, under the prejudice component of *Strickland*, a petitioner must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different" *Strickland*, 466 U.S. at 694. A "reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id*. The prejudice prong does not focus only on the outcome; rather, to establish prejudice, the

petitioner must show that counsel's deficient representation rendered the result of the trial fundamentally unfair or unreliable. *See Lockhart v. Fretwell*, 506 U.S. 364, 369 (1993) ("[A]n analysis focusing solely on mere outcome determination, without attention to whether the result of the proceeding was fundamentally unfair or unreliable, is defective."). "Unreliability or unfairness does not result if the ineffectiveness of counsel does not deprive the defendant of any substantive or procedural right to which the law entitles him." *Id*. at 372.

Unless a petitioner satisfies the showings required on both prongs of the *Strickland* inquiry, relief should be denied. *Strickland*, 466 U.S. at 687. Accordingly, once a court decides that one of the requisite showings has not been made, it need not decide whether the other one has been. *Id*. at 697; *Duren v. Hopper*, 161 F.3d 655, 660 (11th Cir. 1998).

### C.  Jenkins's Claim Against Attorney Skier

Jenkins contends that attorney Andrew M. Skier, who represented Jenkins before and during the change of plea hearing and assisted attorney Cleophus Gaines, Jr., at Jenkins's sentencing hearing,[3] rendered ineffective assistance of counsel by failing to request a mental evaluation to ensure that Jenkins was competent to enter his guilty plea. *Doc. No. 1 at 4; Doc. No. 1-1 at 1-4*. According to Jenkins, he informed Skier before entering his plea that he suffered from mental health problems that made it difficult for him to understand the

---

[3]Skier was appointed to represent Jenkins on July 10, 2008 (shortly after arraignment), and represented Jenkins as primary counsel through April 16, 2009, after which date Gaines was appointed to replace him as primary counsel. However, Skier assisted Gaines in preparing for Jenkins's sentencing hearing and was present in court to assist Gaines at the sentencing hearing.

nature of the charges against him and that psychologists and psychiatrists working for the Social Security Administration had found him to be mentally retarded and suffering from personality disorders. *Doc. No. 1-1 at 1-2.* Jenkins maintains that he also told Skier he was not an organizer or boss in the drug conspiracy and that his mental retardation made him susceptible to being manipulated by others (including his uncle, a coconspirator) into committing illegal acts. *Id. at 2.*

In an affidavit addressing Jenkins's allegations, Skier states as follows:

> Mr. Jenkins first claims that he "[t]old (me) that he suffered from mental health problems, which made it difficult to understand the nature of the charges against him. Mr. Jenkins offered as proof the fact that several psychologists and psychiatrists working for the Social Security Administration had found him to be mentally retarded and with personality disorders."

> The issue of mental competence came up several times while discussing the case with Mr. Jenkins. During these discussions, Mr. Jenkins consistently offered vague, non-specific claims of mental incapacity. Upon following up with Mr. Jenkins' family regarding these issues, the answers given were similarly vague.

> It became clear to me as I continued to work on his case that Marcus Jenkins was deeply involved, at the management level, in a complex and wide-ranging drug enterprise with several others. Jenkins was deeply involved in many aspects of this drug enterprise. This belied any allegations that he suffered from any meaningful impairment to his cognitive abilities. In addition, Mr. Jenkins was able to intelligently discuss the factual and legal issues facing him as the case worked its way through the judicial system. He knew what my role was, knew who the prosecutor was and his role, and was able to discuss concepts such as jury strategies, the strength of the evidence against him, and the possibility of becoming a cooperating witness for the Government. At no point did I feel that Marcus Jenkins was not fully aware of exactly what was going on with his case. The questions he asked me as his case progressed were pertinent and pointed. As the case progressed, we discussed in detail the often labyrinthine nuances of the Federal Sentencing

6

Guidelines as they applied to his case, and he grasped the concepts as well as, if not better than, most of my clients are able to.

Because I saw no genuine grounds to move the Court for a pre-trial psychological evaluation, I did not file for such an evaluation to be conducted. It was my opinion at the time and remains my opinion that such an evaluation was unnecessary, not warranted by the evidence of his alleged mental deficiency, would have served only to delay adjudication of his case, and do unnecessary harm to his value as a cooperating witness for the government, a role for which he was to receive a significant amount of time off his sentence.

Out of an abundance of caution, and because I thought the results would be helpful to Mr. Jenkins during his incarceration, I did move, after Mr. Jenkins' change of plea, for a presentence mental evaluation. The results of that evaluation confirm my impressions of Mr. Jenkins' mental state, as the main finding was that Mr. Jenkins was "malingering," or as the examiner puts it, "the gross exaggeration or fabrication of psychological symptoms to avoid a legal consequence." Borderline Intellectual Functioning was also ruled out by the Forensic Psychologist who performed the evaluation on Mr. Jenkins.

In conclusion, I did discuss and seriously consider the mental incapacity claims made by Mr. Jenkins, and it was my opinion at the time that such a filing would be frivolous, would only serve to waste valuable time in the progress of his case, and would damage his attractiveness as a Government witness. My opinion at that time was borne out by the results of the pre-sentence evaluation that was ordered by the Court. Further, Mr. Jenkins was the beneficiary of a Plea Agreement with the Government that reduced his sentence significantly. Had we moved for an evaluation, it is my belief that Mr. Jenkins would not have received nearly as favorable a plea agreement as he did. My handling of Mr. Jenkins' case was anything but ineffective.

*Doc. No. 6 at 1-3.*

As noted by Skier in his affidavit, the report summarizing the results of the

presentence psychiatric evaluation of Jenkins, which was performed by Dr. Randall Rattan,

concluded that Jenkins was not in fact suffering from a mental disorder or defect but that

instead he was malingering (i.e., feigning a mental disorder or psychological symptoms in

an effort to avoid a legal consequence or repercussions for criminal behavior). *Doc. No. 11-4 at 9-11.* Because Jenkins displayed inconsistent effort on cognitive measures during the psychiatric evaluation (and there were indications suggesting that his performance did not accurately represent his true level of cognitive functioning), Dr. Rattan did not assign a diagnosis of mental retardation to Jenkins, despite Jenkins's poor performance on an intelligence test that was administered as part of the psychiatric evaluation.[4] *Id. at 7-11.* The report included the following relevant observations by Dr. Rattan:

> The defendant's self-initiated topics of discussion, with various correctional staff and this examiner, typically involved his need for psychiatric evaluation and need for "meds." He appeared angry and quick to perceive slight, regarding the credibility of his reported symptoms; however, his observed, asymptomatic behavior contraindicated need for such medication. Thought

---

[4]Dr. Rattan set forth the following reasons for ruling out a designation of "Borderline Intellectual Functioning" for Jenkins:

> Although previous placement in "Special Education" classes in school is noted as possible (but not fully corroborated), such a report is not considered dispositive as to the issue of intellectual function. Several reasons are noted in this regard and include: 1. Lacking information regarding the defendant's motivation (or lack thereof) regarding academic pursuits; 2. Lacking information regarding motivation/effort during previous psychometric assessment(s) on which Special Education was purportedly based (i.e., it is rare for educational assessments of intellectual functioning to include forensic instruments specifically designed to assess effort on testing as was conducted in this matter); 3. Lacking information regarding formal assessments of adaptive skills of living – a prerequisite for formal inclusion of a diagnosis of Mild Mental Retardation to protect against biases in testing as applied to ethnic minority populations; and 4. The likely lack of information available to previous examiners regarding adaptive skills of living in illicit commerce (i.e., reviewed investigative records indicated a higher degree of adaptive skills of living are present in the execution of his illicit commerce, both for which he currently pled guilty to and in reference to previous criminal behavior).

*Doc. No. 11-4 at 10.*

content also involved sua sponte discussions of the potential use of this examination to re-examine his competency. This examiner informed the defendant that both attorneys had been contacted in this matter and that review of competency was outside the scope of this court's order. He was also informed that his sua sponte discussion of raising competency concerns paradoxically contraindicated impairment in this area as such issues would not be typically be proffered by persons not competent to stand trial (and would especially be unlikely to be proffered by persons with his obtained scores on a measure of intellectual ability).

*Id. at 6.*[5] Dr. Rattan's ultimate opinion and recommendation were (1) that Jenkins was not suffering from a mental disease or defect that required his custody for care or treatment in an inpatient psychiatric facility and (2) that he be recommended for an interview to determine his appropriateness for comprehensive substance-abuse treatment services. *Id. at 11*.

"Incompetency means 'suffering from a mental disease or defect rendering [a defendant] mentally incompetent to the extent that he is unable to understand the nature and consequences of the proceedings against him or to assist properly in his defense.'" *Battle v. United States*, 419 F.3d 1292, 1298 (11th Cir. 2005) (quoting 18 U.S.C. § 4241(a)). To show entitlement to an evidentiary hearing on a competency claim, a petitioner must present "clear and convincing evidence creating a real, substantial and legitimate doubt as to his competence to stand trial." *Johnston v. Singletary*, 162 F.3d 630, 637 (11th Cir. 1998) (quoting *Medina v. Singletary*, 59 F.3d 1095, 1106 (11th Cir. 1995)). "This standard of proof

---

[5]According to Dr. Rattan's report, weekly behavioral observations of Jenkins were made by jail staff, who reported Jenkins to be alert and oriented with no signs of confusion or disorganized behavior. *Doc. No. 11-4 at 6-7*. In addition, Jenkins was considered a good prisoner "with the exception of 'demanding' to have a psychiatric consultation and frequently complain[ing] of his need for 'meds.'" *Id. at 7*. Jenkins was prescribed no psychotropic medications during his evaluation period, "due to lack of needs for such agents." *Id.*

is high; and 'the facts must positively, unequivocally, and clearly generate the legitimate doubt.'" *Battle*, 419 F.3d at 1299 (quoting *Medina*, 59 F.3d at 1106).  In order to actually prevail on such a claim, the petitioner must prove by a preponderance of the evidence that he was in fact incompetent to stand trial. *Johnston*, 162 F.3d at 637 n.7; *see also Battle*, 419 F.3d at 1298-99; *Medina*, 59 F.3d at 1106.

Here, Skier found Jenkins to be fully capable of intelligently discussing the factual and legal issues facing him and of assisting in his defense.  Accordingly, it was Skier's opinion that a mental evaluation to assess Jenkins's competency was unnecessary and unwarranted.  In addition, Skier believed that such an evaluation could delay adjudication of Jenkins's case and deprive him of any benefits he might receive as a cooperating witness for the government.  Moreover, Skier understood the evidence of Jenkins's management-level involvement in a complicated drug conspiracy to belie Jenkins's claims that he was incapable of organizing such an enterprise and that he was manipulated by others into participating in criminal activity.  Skier's decision to eschew a mental evaluation of Jenkins prior to entry of his guilty plea was not unreasonable, since he had seen no evidence of incompetence during his representation of Jenkins. *See Weeks v. Jones*, 26 F.3d 1030 104 (11th Cir. 1994) (counsel was not ineffective for failing to seek psychiatric evaluation of defendant where defendant had no problems communicating with counsel, never seemed "out of touch with reality," and "made his own decisions").

Finally, the presentence psychiatric evaluation of Jenkins confirmed Skier's prior

assessment that Jenkins was not suffering from any mental disease or defect that prevented him from understanding the proceedings or assisting in his defense.  In fact, the psychiatric evaluation, in which it was concluded that Jenkins was malingering, strongly indicated that Jenkins would feign or exaggerate mental disorders in order to avoid legal repercussions for his independent and conscious wrongdoing.  The results of the presentence psychiatric evaluation militate against any finding that Jenkins was prejudiced by his failure to undergo a formal mental evaluation prior to entry of his guilty plea.  Because Jenkins has failed to present this court with facts that positively, unequivocally, and clearly generate a legitimate doubt about his competency to understand the proceedings and assist in his defense, he has not shown that Skier rendered ineffective assistance of counsel by failing to request a mental evaluation prior to entry of his guilty plea.  Therefore, Jenkins is not entitled to any relief based on this claim.

### D.   Jenkins's Claim Against Attorney Gaines

Jenkins contends that attorney Cleophus Gaines, Jr., rendered ineffective assistance of counsel by failing to argue mental health issues at his sentencing.  *Doc. No. 1 at 4; Doc. No. 1-1 at 3-5.*  In this regard, Jenkins maintains that although his mother obtained and furnished copies of his mental health records to Gaines prior to sentencing, Gaines neglected to present those records at sentencing,[6] depriving him of the opportunity to obtain a downward departure under U.S.S.G. § 5K2.13 based on his mental retardation and

---

[6]Jenkins alleges that Gaines forgot to bring these documents to the sentencing hearing. *Doc. No. 1-1 at 2.*

11

diminished mental capacity.[7]  *Id*.

In an affidavit addressing Jenkins's allegations in this regard, Gaines avers, in pertinent part, as follows:

4.  I was appointed to this case as new primary counsel on April 16, 2009.  Notwithstanding this appointment, Andrew Skier, counsel at trial, was retained by the court and was present at sentencing.

5.  Prior to my appointment, Mr. Skier had already requested and obtained a Psychological Evaluation.

6.  By court order dated, January 06, 2009, Mr. Jenkins was evaluated on March 19, 2009 by Randall Rattan, Ph.D., ABPP.

7.  Dr. Rattan found no evidence of a formal thought disorder.  Instead Dr. Rattan concluded that Mr. Jenkins was malingering.

8.  Thus, the report from this Psychological Evaluation did not support a diagnosis of mental retardation.

9.  Mr. Jenkins further claims that, "Jenkins had his mother obtain copies of his Mental Health records and gave them to Mr. Gaine[s].  At sentencing Mr. Gaine[s] told Jenkins that he 'forgot' to bring the Mental Health records with him to court and therefore he could not raise the issue at sentencing."

10.  Mr. Jenkins is correct that his mother delivered a document to my office regarding SSI Disability.

11.  This document, however, is a summation of the time periods during which Mr. Jenkins received SSI disability payments.  Although the document

---

[7]U.S.S.G. § 5K2.13 provides that if the defendant committed a non-violent offense while suffering from significantly reduced mental capacity not resulting from voluntary use of drugs or other intoxicants, a downward sentencing departure may be warranted to reflect the extent to which reduced mental capacity contributed to the commission of the offense, provided that the facts of the offense and the defendant's criminal history do not indicate a need for incarceration to protect the public.

purports that Mr. Jenkins received these payments due to mental retardation and personality disorders. There was no clinical evidence by a trained professional to support the conclusions in the document. Moreover, this summation of disability payments was signed by an office manager with Social Security Administration and not a doctor.

12. It was my assessment that the SSI document, in and of itself, would not contradict the evaluation performed by a trained psychologist.

13. At sentencing, I raised all relevant issues that could possibly reduce Mr. Jenkins' sentence. I reviewed the document referenced by Mr. Jenkins and it received its appropriate weight for sentencing purposes. I did not forget this document at sentencing.

*Doc. No. 5 at 1-3* (citations to document and page numbers omitted).

To be eligible for consideration for a downward departure based on diminished mental capacity, a defendant must demonstrate, *inter alia*, "that his reduced mental capacity 'contributed' to the commission of the crime." *See United States v. Ruff*, 998 F.Supp. 1351, 1361 (M.D. Ala. 1998); U.S.S.G. § 5K2.13. A departure based on diminished mental capacity "'requires a showing that the defendant's reduced mental capacity contributed to the commission of the offense; such a link cannot be assumed.'" *Ruff*, 998 F.Supp at 1361 (quoting *United States v. Frazier*, 979 F.2d 1227, 1230 (7th Cir. 1992)). A "departure is warranted if the defendant's reduced mental capacity prevents the defendant from appreciating the wrongfulness of the offense, or if the defendant understands the wrongfulness of the act, but the reduced mental capacity renders the defendant unable to control the offensive conduct." *Ruff*, 998 F.Supp. at 1361.

Here, the evidence of Jenkins's mental retardation and other mental health issues

indicated in the document from the Social Security Administration provided to Gaines by Jenkins's mother was more than offset by evidence demonstrating Jenkins's competence, specifically the psychiatric evaluation performed in anticipation of his sentencing, which concluded that Jenkins did not suffer from a mental disease or defect but that, instead, he was feigning a mental disorder and psychological symptoms in an attempt to avoid the legal consequence of his criminal behavior.[8]  As Gaines notes in his affidavit, although Jenkins's mother provided him with the document purporting that Jenkins had received SSI disability payments due to mental retardation and personality disorders, "there was no clinical evidence by a trained professional to support the conclusions in the document" and "this summation of disability payments was signed by an office manager with Social Security Administration and not a doctor."  *Doc. No. 5 at 2.*  In light of the ample evidence that Jenkins was malingering, Gaines's decision not to argue mental health issues as a basis for reducing Jenkins's sentence was reasonable.  *See Hubbard v. Haley*, 317 F.3d 1245, 1260 (11th Cir. 2003) (counsel was not ineffective in deciding not to present evidence of defendant's alcoholism, mental retardation, and deprived upbringing where such evidence was more than offset by other evidence of defendant's competence).  Moreover, in light of the nature of the evidence contained in the psychiatric evaluation performed on Jenkins, this court finds no

---

[8]Also militating against any finding that Jenkins's diminished mental capacity contributed to his commission of the offense was the evidence of his managerial role in the wide-ranging and relatively complicated drug-trafficking enterprise.  At sentencing, a narcotics agent assigned to Jenkins's case testified that of the seventeen coconspirators involved in the drug ring, fourteen ranked lower than Jenkins on the organizational chart while only two ranked higher than Jenkins. *Doc. No. 11-5 at 10-12.*

reasonable likelihood that the outcome of the sentencing proceeding would have been different had Gaines pursued a downward departure based on mental health arguments. For these reasons, Jenkins is not entitled to any relief based on his claim that Gaines rendered ineffective assistance of counsel.

### III.   CONCLUSION

Accordingly, it is the RECOMMENDATION of the Magistrate Judge that the 28 U.S.C. § 2255 motion filed by Jenkins be denied with prejudice, as the claims therein entitle her to no relief.

It is further

ORDERED that the parties shall file any objections to this Recommendation **[on or before May 17, 2012**.   A party must specifically identify the findings in the Recommendation to which objection is made; frivolous, conclusive, or general objections will not be considered.  Failure to file written objections to the Magistrate Judge's proposed findings and recommendations shall bar a party from a de novo determination by the District Court of issues covered in the Recommendation and shall bar the party from attacking on appeal factual findings accepted or adopted by the District Court except upon grounds of plain error or manifest injustice.  *Nettles v. Wainwright*, 677 F.2d 404 (5th Cir. 1982).  *See Stein v. Reynolds Securities, Inc.*, 667 F.2d 33 (11th Cir. 1982).  *See also Bonner v. City of Prichard*, 661 F.2d 1206 (11th Cir. 1981) (en banc).

Done this 3rd day of May, 2012.

15

/s/Terry F. Moorer
TERRY F. MOORER
UNITED STATES MAGISTRATE JUDGE